Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAY QUAGLIANI, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1) Violation of § 14 (a) of the Securities Exchange Act of 1934 |
| EVERBRIDGE, INC., DAVID HENSHALL, DAVID BENJAMIN, RICHARD D'AMORE, ALISON DEAN, ROHIT GHAI, KENT MATHY, SIMON PARIS, SHARON ROWLANDS, and DAVID WAGNER. | (2) Violation of § 20(a) of the Securities Exchange Act of 1934 |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff, Ray Quagliani ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder action against Everbridge, Inc. ("Everbridge" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Project Emerson Parent, LLC ("Parent"), through

merger vehicle Project Emerson Merger Sub, Inc. ("Merger Sub") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction"). Parent and Merger Sub are affiliates of Thoma Bravo Discover Fund IV, L.P. ("Thomas Bravo Fund"), an investment fund managed by Thoma Bravo, L.P. (together with Parent, Merger Sub, and Thoma Bravo Fund, "Thoma Bravo").

2.      The terms of the Proposed Transaction were memorialized in a February 5, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the Definitive Agreement and Plan of Merger and subsequently amended and restated on March 1, 2024 (together, the "Merger Agreement"). Under the terms of the Merger Agreement, Everbridge shareholders will receive $35.00 per share in cash for each share of Company stock they hold.

3.      Thereafter, on March 11, 2024, the Company filed its Preliminary Proxy Statement on Schedule PREM 14A (the "Preliminary Proxy Statement") with the United States Securities and Exchange Commission (the "SEC"). On March 21, 2024, the Company filed its Definitive Proxy Statement on Schedule DEFM 14A with the SEC (together with the Preliminary Proxy Statement, the "Proxy Statement").

4.      The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: (a) Company insiders own company options, restricted stock units, and other equity awards, all of which are subject to accelerated vesting and conversion into merger consideration; and (b) certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5.      The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Everbridge, provided by the Company Management to the Company's financial advisors Qatalyst Partners LP ("Qatalyst") and the Company's Strategic Transaction Committee (the "Transaction Committee"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Qatalyst, and provided to the Board and the Transaction Committee.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.      Plaintiff is a citizen of New Hampshire and, at all times relevant hereto, has been an Everbridge stockholder.

8.      Defendant Everbridge operates as a software company that enables customers to anticipate, mitigate, respond to, and recover from critical events in North America and internationally. Everbridge is incorporated under the laws of the State of Delaware and has its principal place of business at 25 Corporate Drive, Suite 400, Burlington, MA 01803. Shares of Everbridge common stock are traded on the NASDAQ Capital Markets under the symbol "EVBG."

9.      Defendant David Henshall ("Henshall") has been the Chairman of the Board of Directors of the Company at all relevant times.

10.     Defendant David Benjamin ("Benjamin") has been a director of the Company at all relevant times.

11.     Defendant Richard D'Amore ("D'Amore") has been a director of the Company at all relevant times.

12.     Defendant Alison Dean ("Dean") has been a director of the Company at all relevant times.

13.     Defendant Rohit Ghai ("Ghai") has been a director of the Company at all relevant times.

14.     Defendant Kent Mathy ("Mathy") has been a director of the Company at all relevant times.

15.     Defendant Simon Paris ("Paris") has been a director of the Company at all relevant times.

16.     Defendant Sharon Rowlands ("Rowlands") has been a director of the Company at all relevant times.

17.     Defendant David Wagner ("Wagner") has been a director of the Company at all relevant times. In addition, Defendant Wagner is also the President and Chief Executive Officer ("CEO") of the Company.

18.     Defendants identified in ¶¶ 9-17 are collectively referred to as the "Individual Defendants."

19.     Non-Party Parent is an affiliate of Thoma Bravo Investments L.P.

20.     Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

21.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NASDAQ Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

24.    Defendant Everbridge operates as a software company that enables customers to anticipate, mitigate, respond to, and recover from critical events in North America and internationally.

25.    The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the November 9, 2023, press

release announcing its 2023 Q3 financial results, the Company highlighted such milestones as: Revenue for the third quarter was up 3% year-over-year to $114.2 million, and GAAP net income was $1.7 million, compared to a net loss of $(22.1) million for the third quarter of 2022.

26.     Speaking on these positive results, CEO Defendant Wagner commented on the Company's positive financial results as follows, "We delivered solid third quarter results as we continue to improve our go-to-market execution and overall operating efficiency."

27.     CEO Defendant Wagner continued that sentiment by stating, "We saw healthy year-over-year improvements, including our strongest recurring bookings quarter of the year, and efficiency improvements across the business allowing us to increase adjusted EBITDA by $8.5 million in the third quarter compared to last year."

28.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success by Everbridge. Based upon these positive financial results and outlook, the Company is likely to have future success.

29.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Everbridge to enter into the Proposed Transaction without providing requisite information to the Company's stockholders such as Plaintiff.

***The Flawed Sales Process***

30.     As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed to effectuate a sale of the Company to Thoma Bravo.

31.     In addition, the Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Thoma Bravo and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not

specifically mentioned by the Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

32.    Moreover, the Proxy Statement fails to adequately disclose any and all communications regarding post-transaction employment during the negotiation of the underlying transaction.

33.    It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

**The Proposed Transaction**

34.    On February 5, 2024, Everbridge and Thoma Bravo issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> BURLINGTON, Mass. & MIAMI--(BUSINESS WIRE)--Feb. 5, 2024-
> - Everbridge, Inc. (Nasdaq: EVBG) ("Everbridge" or the "Company"), a
> global leader in critical event management ("CEM") and national public
> warning solutions, today announced that it has entered into a definitive
> agreement to be acquired by Thoma Bravo, a leading software investment
> firm, in an all-cash transaction valuing Everbridge at approximately $1.5
> billion. The transaction is expected to help accelerate the Company's
> continued growth at a time of rising global uncertainty and increased
> prioritization of public safety and operational continuity. Upon completion
> of the transaction, Everbridge will become a privately held company.
>
> Under the terms of the agreement, Everbridge shareholders will
> receive $28.60 per share in cash. The per share purchase price represents a
> 32% premium to the Everbridge volume-weighted average share price over
> the last 90 days.
>
> Everbridge was founded in the aftermath of 9/11 with the mission of helping
> to keep people safe and organizations running amid critical situations. Its
> suite of Software-as-a-Service ("SaaS") products encompassing mass
> notification, IT incident management, travel risk management, *physical
> security information management*, population alerting, and risk intelligence,
> has positioned Everbridge as a trusted partner to meet the evolving needs of
> a diverse base of 6,500+ customers through a comprehensive and unified
> interface. Everbridge customers include multi-national enterprises across

industries such as financial services, manufacturing, retail, transportation, energy & gas, and education, as well as national, state, and local government bodies and U.S. Federal agencies.

"Joining Thoma Bravo will mark a pivotal moment for Everbridge and our mission to empower organizations worldwide with the tools to successfully navigate critical events," said David Wagner, President and CEO of Everbridge. "Over the last several years, we have expanded and evolved our business to support customers in an increasingly complex threat landscape. Thoma Bravo's comprehensive experience in the risk, compliance, and safety sectors and commitment to fostering innovation will enable us to better help our customers keep people safe and their organizations running. This agreement is a testament to all we've achieved together as one Everbridge and represents the beginning of an exciting new chapter for our team, our partners, and our customers."

"We are pleased to deliver immediate, compelling, and certain value to our shareholders through this transaction," said David Henshall, Chairman and Lead Independent Director of the Everbridge Board of Directors. "Over the past several years, the Everbridge Board has consistently reviewed the Company's stand-alone opportunity against other strategic opportunities, including dialogue with a range of potential partners. This agreement is the result of those efforts and reflects our commitment to maximizing value and certainty on behalf of our shareholders."

"We look forward to working with Everbridge to expand their ability to capitalize on opportunities in an expanding marketplace for risk, compliance, and safety solutions," said Hudson Smith, Partner at Thoma Bravo. "The Everbridge product portfolio is already used by some of the world's most-respected corporations and organizations to comprehensively monitor risk and manage critical events, and we see an extensive runway ahead for product innovation and profitable growth."

"We're thrilled to partner with the Everbridge team to keep building on the strong business they've created in critical event management," said Matt LoSardo, Principal at Thoma Bravo. "Our shared vision, coupled with Thoma Bravo's software and operational competencies, will support Everbridge to accelerate its growth initiatives and better serve its customers during this exciting next chapter for the company."

**Transaction Details**

The transaction, which was approved by the Everbridge Board of Directors, is expected to close in the second calendar quarter of 2024, subject to customary closing conditions, including approval by Everbridge shareholders

and the receipt of required regulatory approvals. The transaction is not subject to a financing condition.

The agreement includes a 25-day "go-shop" period expiring on February 29, 2024, which permits the Everbridge Board and its advisors to actively initiate and solicit alternative acquisition proposals from certain third parties, as described in the merger agreement. The Everbridge Board has the right to terminate the merger agreement to accept a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and Everbridge does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or otherwise required.

Upon completion of the transaction, Everbridge common stock will no longer be listed on any public stock exchange. The Company will continue to operate under the Everbridge name and brand.

### *Potential Conflicts of Interest*

35.     The breakdown of the benefits of the deal indicates that Everbridge insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Everbridge.

36.     In addition, Company insiders currently own Company Common Stock, Company options, restricted stock units, and other equity awards, all of which will be subject to accelerated vesting upon the consummation of the Proposed Transaction, and converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name | Shares of Common Stock Number of Shares (#) | Shares of Common Stock Value of Shares ($) | In-the-Money Vested Everbridge Options Number of Shares Subject to Vested Portion (#) | In-the-Money Vested Everbridge Options Value of Shares Subject to Vested Portion ($) | In-the-Money Vested Everbridge Options Number of Shares Subject to Unvested Portion (#) | In-the-Money Vested Everbridge Options Value of Shares Subject to Unvested Portion ($) | Everbridge RSUs Number of Shares Subject to Vested Portion (#) | Everbridge RSUs Value of Shares Subject to Vested Portion ($) | Everbridge RSUs Number of Shares Subject to Unvested Portion (#) | Everbridge RSUs Value of Shares Subject to Unvested Portion ($) | Everbridge PSUs Number of Shares Subject to Vested Portion (#) | Everbridge PSUs Value of Shares Subject to Vested Portion ($) | Everbridge PSUs Number of Shares Subject to Unvested Portion (#) | Everbridge PSUs Value of Shares Subject to Unvested Portion ($) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| David Benjamin | 5,747 | $ 201,145 | 0 | $ 0 | 0 | $ 0 | 0 | $ 0 | 8,068 | $ 282,380 | 0 | $ 0 | 0 | $ 0 |

| Name | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Richard D'Amore | 17,347 | $ 607,145 | 0 | $ 0 | 0 | $ 0 | 0 | $ 0 | 8,068 | $ 282,380 | 0 | $ 0 | 0 | $ 0 |
| Alison Dean | 15,847 | $ 554,645 | 0 | $ 0 | 0 | $ 0 | 0 | $ 0 | 8,068 | $ 282,380 | 0 | $ 0 | 0 | $ 0 |
| Rohit Ghai | 5,747 | $ 201,145 | 0 | $ 0 | 0 | $ 0 | 0 | $ 0 | 8,068 | $ 282,380 | 0 | $ 0 | 0 | $ 0 |
| David Henshall | 36,661 | $1,283,135 | 0 | $ 0 | 0 | $ 0 | 0 | $ 0 | 8,068 | $ 282,380 | 0 | $ 0 | 0 | $ 0 |
| Kent Mathy | 12,047 | $ 421,645 | 5,000 | $50,650 | 0 | $ 0 | 0 | $ 0 | 8,068 | $ 282,380 | 0 | $ 0 | 0 | $ 0 |
| Simon Paris | 8,876 | $ 310,660 | 0 | $ 0 | 0 | $ 0 | 0 | $ 0 | 8,068 | $ 282,380 | 0 | $ 0 | 0 | $ 0 |
| Sharon Rowlands | 11,347 | $ 397,145 | 0 | $ 0 | 0 | $ 0 | 0 | $ 0 | 8,068 | $ 282,380 | 0 | $ 0 | 0 | $ 0 |
| David Wagner | 68,518 | $2,398,130 | 0 | $ 0 | 0 | $ 0 | 0 | $ 0 | 112,500 | $3,937,500 | 0 | $ 0 | 200,000 | $7,000,000 |
| David Rockvam | 0 | $ 0 | 0 | $ 0 | 0 | $ 0 | 0 | $ 0 | 115,000 | $4,025,000 | 0 | $ 0 | 60,000 | $2,100,000 |
| Patrick Brickley | 130,768 | $4,576,880 | 3,597 | $ 6,978 | 0 | $ 0 | 0 | $ 0 | 41,490 | $1,452,150 | 0 | $ 0 | 35,106 | $1,228,710 |
| Phillip Huff | 13,021 | $ 458,220 | 0 | $ 0 | 0 | $ 0 | 0 | $ 0 | 7,053 | $ 246,855 | 0 | $ 0 | 7,441 | $ 260,435 |
| Bryan Barney | 18,939 | $ 864,885 | 0 | $ 0 | 0 | $ 0 | 0 | $ 0 | 68,750 | $2,406,250 | 0 | $ 0 | 100,000 | $3,500,000 |
| John Di Leo | 19,963 | $ 875,000 | 0 | $ 0 | 0 | $ 0 | 0 | $ 0 | 75,000 | $2,625,000 | 0 | $ 0 | 100,000 | $3,500,000 |
| Noah Webster | 8,983 | $ 314,405 | 0 | $ 0 | 0 | $ 0 | 0 | $ 0 | 19,762 | $ 691,670 | 0 | $ 0 | 28,745 | $1,006,075 |

37.     In addition, employment agreements with certain Everbridge executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff, as follows:

| Name | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Total ($) |
|---|---|---|---|---|
| David Wagner, Chief Executive Officer | $ 567,055 | $10,937,500 | $ 27,607 | $11,532,162 |
| David Rockvam, Chief Financial Officer | $1,025,288 | $ 0 | $ 28,883 | $ 1,054,171 |
| Patrick Brickley, former Chief Financial Officer | $ 40,000 | $ 0 | $ 0 | $ 40,000 |
| Phillip Huff, Chief Accounting Officer | $ 3,667 | $ 0 | $ 0 | $ 3,667 |
| Bryan Barney, Chief Product Officer | $ 500,274 | $ 5,906,250 | $ 35,989 | $ 6,442,513 |

38.     The Proxy Statement also fails to adequately disclose the totality of the communications regarding post-transaction employment during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

39.     This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning

motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40.     Thus, while the Proposed Transaction is not in the best interests of Everbridge, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Proxy Statement***

41.     The Everbridge Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

42.     The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy Statement fails to disclose:

  a. Whether the confidentiality agreements entered into by the Company with Thoma Bravo differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

  b. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and

potentially interested third parties throughout the sales process, including Thoma Bravo, would fall away; and

c.  Any and all communications regarding post-transaction employment during the negotiation of the underlying transaction.

43.    This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Everbridge's Financial Projections*

44.    The Proxy Statement fails to provide material information concerning financial projections for Everbridge provided by Everbridge management to the Board and Qatalyst and relied upon by Qatalyst in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

45.    Notably the Proxy Statement reveals that as part of its analyses, Qatalyst reviewed, "reviewed the Company Projections."

46.    Therefore, the Proxy Statement should have, but fails to provide, certain information in the projections that Everbridge management provided to the Board and Qatalyst. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

47.     With regard to the *Unaudited Prospective Financial Information* provided by Everbridge Management, the Proxy Statement fails to disclose material line items for the following metrics:

> a.   Total Revenue, including all underlying metrics used to calculate same;
>
> b.   Adjusted EBITDA, including all underlying inputs, metrics, and assumptions used to calculate same; and
>
> c.   Unlevered Free Cash Flow, including all underlying inputs, metrics, and assumptions used to calculate same.

48.     The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

49.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

50.     Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Qatalyst financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Qatalyst*

51.     In the Proxy Statement, Qatalyst describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying

assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinions.

52.     With respect to the *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose the following:

a.   The underlying inputs, metrics, and assumptions used to determine the discount rate range of 11.0% to 12.0% utilized;

b.   The implied net present value of the Company, calculated;

c.   The terminal values for Company, calculated;

d.   The underlying inputs, metrics, and assumptions used to determine the fully diluted enterprise value to next-twelve-months estimated EFCF multiples of 12.0x to 19.5x, utilized; and

e.   The number of fully-diluted outstanding shares of Company common stock outstanding (calculated using the treasury stock method, taking into account the restricted stock units, performance-based restricted stock units) and in-the-money stock options as of February 14, 2024.

53.     With respect to *Selected Companies Analysis,* the Proxy Statement fails to disclose the following:

a.   The specific metrics for each selected public companies;

b.   The fully diluted enterprise value for the selected public companies;

c.   The underlying inputs, metrics, and assumptions used to determine the CY2024E Revenue Multiples range of 2.0x to 3.5x, utilized;

d.   The underlying inputs, metrics, and assumptions used to determine the CY2024E Adjusted EBITDA Multiples representative range of 8.5x to 15.0x, utilized;

e.  The underlying inputs, metrics, and assumptions used to determine the CY2024E LFCF Multiples representative range of 11.0x to 18.5x, utilized; and

f.  The number of fully-diluted outstanding shares of Company common stock outstanding (calculated using the treasury stock method, taking into account the restricted stock units, performance-based restricted stock units) and in-the-money stock options as of February 14, 2024.

54.  With respect to the *Selected Transactions Analysis,* the Proxy Statement fails to disclose the following:

a.  The specific date on which each selected transaction was consummated;

b.  The aggregate value of each selected transaction;

c.  The underlying inputs, metrics, and assumptions used to determine the LTM Revenue Multiples range of 2.0x to 5.5x, utilized;

d.  The underlying inputs, metrics, and assumptions used to determine the LTM Adjusted EBITDA Multiples range of 11.0x to 22.0x, utilized;

e.  The underlying inputs, metrics, and assumptions used to determine the LTM LFCF Multiples range of 12.0x to 27.0x, utilized;

f.  The underlying inputs, metrics, and assumptions used to determine the NTM Revenue Multiples range of 2.0x to 5.0x, utilized;

g.  The underlying inputs, metrics, and assumptions used to determine the NTM Adjusted EBITDA Multiples range of 10.0x to 18.0x, utilized;

h.  The underlying inputs, metrics, and assumptions used to determine the NTM LFCF Multiples range of 13.0x to 22.0x, utilized; and

i.  The number of fully-diluted outstanding shares of Company common stock outstanding (calculated using the treasury stock method, taking into account the restricted stock units, performance-based restricted stock units) and in-the-money stock options as of February 14, 2024.

55.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

56.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the Proposed Transaction truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Everbridge stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

57.     Plaintiff repeats all previous allegations as if set forth in full herein.

58.     Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

59.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities

exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

60.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any Proxy Statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

61.     The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

62.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

63.     The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

64.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

65.     Plaintiff repeats all previous allegations as if set forth in full herein.

66.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

67.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement; and nevertheless, approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy

Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

68.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Everbridge's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

69.     The Individual Defendants acted as controlling persons of Everbridge within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Everbridge to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Everbridge and all of its employees. As alleged above, Everbridge is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate

a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: March 25, 2024                    **BRODSKY & SMITH**

By: *Evan J. Smith*
                                         Evan J. Smith
                                         240 Mineola Boulevard
                                         Mineola, NY  11501
                                         Phone:  (516) 741-4977
                                         Facsimile (561) 741-0626

                                         *Counsel for Plaintiff*